UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV02114 RWS (AGF) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security offsetting Plaintiff Terry Miller's disability insurance benefits in light of his workers' compensation settlement. Plaintiff argues that the Commissioner erred in treating a portion of the settlement as benefits payable on a monthly basis, as opposed to a lump sum to be pro-rated in accordance with the Commissioner's regulations. For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed with respect to the issue raised by Plaintiff. As to a calculation issue not raised by the parties, however, the Court recommends that the case be remanded for a re-calculation of Plaintiff's benefits.

**BACKGROUND**

**Award of Disability Insurance Benefits**

On July 21, 1994, Plaintiff sustained an on-the-job injury. On February 6, 1997,

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, claiming disability since the work-related accident. Tr. at 24. On December 24, 1997, an Administrative Law Judge ("ALJ") found that Plaintiff was disabled from July 21, 1994, to July 8, 1997, due to post-back-fusion condition and problems with his upper extremities, left knee, and right lower extremity. Tr. at 24-32. The Social Security Administration ("SSA") subsequently determined that Plaintiff continued to be disabled after 1997. Tr. at 11, 71. On August 17, 1998, Plaintiff applied for Title II benefits for his minor daughter based upon his earnings record. Tr. 34-39.

**<u>Workers' Compensation Settlement</u>**

On October 25, 2000, Missouri's Second Injury Fund ("SIF") authorized a settlement to Plaintiff of $40,000 for his work-related injuries. Tr. at 102. On December 5, 2000, a Stipulation for Compromise Settlement (the "settlement agreement"), drafted partially on a Division of Workers' Compensation form, was signed by Plaintiff, Plaintiff's attorney, the attorney for the SIF, and the attorney for the employer/insurer. The insurer is identified as "Fire & Casualty Ins. c/o Royal & SunAlliance." Tr. at 103. The settlement agreement states that Plaintiff sustained an injury at work on July 21, 1994; that Plaintiff's weekly workers' compensation rate (prior to the settlement) was $350.83 for temporary benefits, which were paid for 218 3/7 weeks, and $249.48 for permanent partial disability; that the parties "agreed to enter into a compromise lump sum settlement under Section 287.390 RSMo as amended for the payment of a lump sum of $45,858.10"; that the SIF was making a payment of $40,000 to Plaintiff; that the

employer and insurer agreed to a "lump sum payment of $45,858.10 and additional monthly payouts set out in Exhibit B"; that Plaintiff's attorney's fees amounted to 25 percent of any amount recovered by the settlement; and that Plaintiff "elects to receive payments in one lump sum." Id.

Exhibit B provides in relevant part as follows:

**Payments**

In consideration of the release set forth above, the insurer on behalf of the insured/employer hereby agrees to cause to be made payable to the injured employee the following sums in the following manner:

a) **Cash Payments**
The insurer will pay to Terry Miller the sum of $45,858.10 Dollars.

b) **Annuity** through First Colony Life Insurance Company with an A M Best rating of A+ Superior with payments as follows to Terry Miller:

$858.10 payable monthly for 20 years certain and life. Benefits commence 12/01/2000.

All sums set forth above constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, amended.

**Injured Employee's Rights to Payments**

The employee is disabled . . . and may not, directly or indirectly, by assignment or otherwise, sell, mortgage, encumber, or anticipate any payment, or part of any payment, to be made under the settlement. Additionally, the employee may not accelerate or defer said future payments to any time or vary in any respect the payments; receive the present discounted value of future payments; have any control of the investments or funds from which payments are made; have any right to increase or decrease the payments, change or modify the manner, mode or method of meeting any payments or discharging any obligations set forth in this agreement; have the power to sell, mortgage, encumber, or anticipate the future payments, or any part thereof, by assignment or otherwise. Any

agreement or transaction made by the employee in violation of these limitations respecting payments is void. Neither the insurer nor the insured must set aside any asset to fund payments to be made to the employee under this settlement.

### **Right to Purchase an Annuity**

Royal & SunAlliance shall fund its liability to make periodic payments through the purchase of an annuity policy from First Colony Life Insurance Company. Royal & SunAlliance shall be the owner of the annuity policy, and shall have all rights of ownership.

Tr. at 105-06.

The record includes a document entitled "Exhibit A," which may also have been a part of the Stipulation for Compromise Settlement. This document states:

The combined settlements against employer/insurer and the SIF of the State of Missouri are also based on the fact that employee was born on 4/6/53 and is presently 47 years of age with a life expectancy of 28.45 years or 1479.4 weeks [28.45 years x 52 weeks = 1479.4 weeks] for a white male in accordance with the Life Table published by the US government in 1988, which is attached.
The lump sum settlement as against the employer/insurer is in the gross amount of $175,000.00.
The additional lump sum settlement as against the SIF of the State of Missouri is in the gross amount of $40,000.00.
Hence the gross amount of both settlements combined is $215,000.00 [$175,000.00 plus $40,000.00 is $215,000.00]. The gross amount the Employee/Claimant is to receive is to be reduced by the attorney's fee of 25%, amounting to $53,717.88 and expenses of litigations, amounting to $5,282.12, which reduces the net amount payable to Employee/Claimant as $156,000.00.
Therefore, the combined <u>net</u> settlements as against both the employer/insurer and the SIF of the State of Missouri [of] $156,000.00 constitute a prorated amount owed to this employee of $105.49 per week, which would be owed to said employee if this combined net sum were to [be] paid on a weekly basis for the remainder of employee's expected life [$156.000.00 divided by 1479.4 weeks = $105.49 per week].

Tr. at 104.

4

In sum, the following facts with regard to the settlement payout are essentially undisputed. Plaintiff's total workers' compensation settlement against his employer's insurer was $175,000, and he received an additional $40,000 from the SIF, for a total settlement amount of $215,000. From this total, 25 percent in attorney's fees and expenses were deducted, resulting in Plaintiff's portion of the settlement being $156,000.[1] From this amount, $130,000 was used to purchase the annuity at issue in this case, which is described in Exhibit B, leaving Plaintiff with $26,000 in cash. The record indicates that the $45,858.10 figure noted in the settlement agreement represents a lump sum payment of $45,000 plus the equivalent of one month's annuity payment, which the employer's insurer paid Plaintiff in light of a month's delay in concluding the settlement.

**SSA's Offset Decision**

The record does not include the SSA's initial letter to Plaintiff informing him of the determination to offset his and his daughter's benefits. In his brief, Plaintiff asserts that he was informed (on some unidentified date) that his benefits would be reduced to $726.00 per month as a result of his workers' compensation settlement. Pl.'s Br. at 2. On January 28, 2002, Plaintiff filed a Request for Reconsideration of the determination made regarding an overpayment due to the workers' compensation offset, stating as follows:

> I received $353.83 workers' compensation weekly from prior to 2/96 through July 1997. I received $353.83 from 5/98 through 5/99. I received a settlement from workers' comp. of about $156,000 in about 12/00 in the form of an annuity whereby I receive $858.10 monthly for life. I disagree

---

[1] Apparently Plaintiff's attorney waived a small portion of the fees so that the amount left for Plaintiff was an even $156,000.

5

> with the payments that were made to me. Social Security has withheld $18,260 from me and $3013 from my daughter in past benefits and now I have received another letter stating that my daughter is overpaid $2809.50. I disagree with the way this offset was figured. The figures stipulated in my settlement should have not caused an affect [sic] at all. I have previously submitted my workers' compensation stipulation paperwork. My benefits have also been offset and lowered to $718 which I do not agree with.

Tr. at 42-43.

In response, by letter dated May 13, 2003, the SSA explained its offset decision. The letter informed Plaintiff that when a disabled worker is entitled to both Social Security benefits and workers' compensation, an adjustment in the monthly amount of Social Security benefits is required, so that the worker and his family not receive more in combined Social Security and workers' compensation benefits than 80 percent of the worker's average pre-disability earnings. The letter stated that Plaintiff's average pre-disability monthly wage was considered to be $2,502.00, 80 percent of which was $2,001.60. Total family benefits payable by the SSA before any reduction was $1,201.10 (per month). The SSA explained that it combined Plaintiff's workers' compensation award of $45,858.10 with the SIF award of $40,000. It then subtracted 25 percent ($21,464.53) in attorney's fees from the total of $85,858.10, and divided the remainder ($64,393.57) by 1,479.4 weeks, Plaintiff's life expectancy. This resulted in a monthly rate of $188.50 (weekly rate of $43.53 x 4.33 = monthly rate of $188.50). The SSA then combined this monthly rate with the $858.10 monthly annuity payments for a "total offset amount of $1,046.60 beginning December 1, 2000." The letter also stated as follows: "A lump sum is considered to be the same as periodic payments and affects your benefits in

6

the same way. Pro-ration of your lump sum settlements began on May 3, 1999, the day after your weekly periodic payments of $350.83 ended." Tr. at 44-47.

**<u>Evidentiary Hearing</u>**

The offset decision was upheld on reconsideration, and on August 14, 2003, Plaintiff requested a hearing before an ALJ. On August 13, 2004, a hearing was held at which Plaintiff was represented by counsel. Counsel stated that the issues were legal and that the SSA had "inappropriately applied the law." Tr. at 136. Plaintiff testified that he was awarded Social Security benefits in September 2000, and that his benefits were $1,261.80 per month until they were reduced in about January 2000 to approximately $751.00 per month, due to the settlement of his workers' compensation claim. Plaintiff testified that the total workers' compensation settlement against his employer's insurer was $175,000 and that he received an additional $40,000 from the SIF. He testified that after attorney's fee were taken out of this sum, the total settlement amounted to $156,000, which was amortized to his lifetime, resulting in $105.49 per week. Plaintiff testified that he took $130,000 of the $156,000 and used it to purchase an annuity and then began receiving $858.00 per month. He testified that the SSA told him that the reduction of his Social Security benefits was based upon his receipt from the workers' compensation settlement of $85,000, reduced by 25 percent for his attorney's fees; plus $858.00 per month from the annuity. But, according to Plaintiff this "[wasn't] the way it was." Plaintiff stated that the only cash he actually took from the worker's compensation settlement was $26,000. Tr. at 138-43.

Plaintiff's attorney asserted that the annuity had been purchased by Plaintiff "post settlement," and that the SSA had therefore erred in how it computed the reduction in Plaintiff's disability insurance benefits. The ALJ then read from 20 C.F.R. 404.408a as providing that "if one of the alternatives to a lump sum payment is a life annuity, and the amount of the monthly benefit for the life annuity can be determined, the reduction will be based upon that monthly benefit amount."[2] Tr. at 146. The ALJ noted that the issue in this case was not Plaintiff's credibility, but rather the correct application of the relevant statute and regulations. Tr. at 150-51.

**ALJ's Decision of January 27, 2005**

The ALJ stated that Plaintiff had initially argued that his workers' compensation lump sum settlement should not have offset his disability insurance benefits at all; that Plaintiff subsequently "only stated that the amounts were not calculated correctly"; and that at the hearing, Plaintiff and his attorney argued that "the annuity purchased as part of the workers' compensation settlement should not offset [Plaintiff's] disability insurance benefits." The ALJ then stated that neither Plaintiff nor his attorney had referenced any law to support the argument that "the annuity should not have affected [Plaintiff's] disability insurance benefits." Tr. at 11-12.

The ALJ noted that 20 C.F.R. § 404.408(a) requires a reduction in disability insurance benefits "when the claimant is 'concurrently entitled to a periodic benefit

---

[2] Section 404.408a appears to be inapplicable, as it applies to the reduction in Social Security benefits that a spouse or parent of a wage earner is receiving when said spouse or parent is also receiving a government pension.

(including workers' compensation or any other payments based on a work relationship) on account of a total or partial disability (whether or not permanent) under a law or plan of . . . a state . . . or an instrumentality of [the state].'" Tr. at 12. The ALJ pointed to the statement in the workers' compensation settlement agreement in this case that "'all sums set forth [from the above annuity] constitute damages on account of personal physical injuries or sickness . . . .'" Id. (quoting agreement, with brackets and bracketed text added by ALJ). The ALJ determined that based upon the relevant regulations and the language of the workers' compensation settlement, the Commissioner correctly offset the disability insurance benefits "by an amount determined from payments made out of the annuity purchased as a result of the claimant's settlement of his workers' compensation claim." The ALJ stated that as Plaintiff did not offer any specific argument based on the law on how the Commissioner had miscalculated the offset, it was presumed that the Commissioner had correctly calculated the offset. Id. On September 12, 2005, the Appeals Council of the SSA denied Plaintiff's request for review. Tr. at 3.

**Arguments of the Parties**

Plaintiff has submitted to the Court additional records related to the negotiation of the workers' compensation settlement. In connection with the submission of this new evidence, Plaintiff simply states: "Unfortunately, neither Plaintiff nor the ALJ realized that their failure to understand each other could be addressed by additional evidence." Pl.'s Br. at 4. Under 42 U.S.C. § 405(g), consideration of evidence outside the record before the Commissioner is generally precluded, and remand is warranted only upon the

plaintiff's showing that there is new material evidence, and that good cause exists for the plaintiff's failure to incorporate the evidence into the administrative record. Plaintiff has made no such showing here. Accordingly, the Court will limit its review to the record before the ALJ and the Appeals Council.[3]

Plaintiff states in his brief that he "does not dispute that the offset provisions apply, and does not contest the method by which the offset should be computed. Rather, Plaintiff contends that the amount of the settlement used by Defendant does not reflect the actual amount of the benefits received by Plaintiff in his workers' compensation case." Pl.'s Br. at 1. Plaintiff essentially makes a single argument in his brief. He argues that the Commissioner improperly treated Plaintiff's $858.10 monthly annuity payments as periodic benefits payable on a monthly basis, for purposes of the offset, and that instead, the $130,000 used to buy the annuity should have been treated as part of Plaintiff's lump sum settlement. He argues that his new evidence shows that "the description of the settlement contained in Exhibit A of the settlement stipulation is the correct one." According to Plaintiff, when the annuity payments are re-characterized as part of the lump sum settlement and pro-rated accordingly, the settlement would "likely result in no practical offset being applied." Plaintiff offers no re-calculation of the offset based upon his theory of the case, maintaining that this would be the task of the Commissioner upon remand.

---

[3] Consideration of these exhibits, however, would not affect the recommendation of this Court with regard to the issue raised by Plaintiff.

The Commissioner argues that substantial evidence supports the ALJ's determination that the full amount of the annuity payments received each month (as opposed to a pro-rated portion of the $130,000 used to purchase the annuity) should be offset against Plaintiff's disability insurance benefits.

## DISCUSSION

### Standard of Review

The Commissioner's decision must be affirmed if it is supported by substantial evidence on the record as a whole and is free of legal error. 42 U.S.C. § 405(g); Sunde v. Barnhart, 417 F.3d 986, 989 (8th Cir. 2005); Berger v. Apfel, 200 F.3d 1157, 1161 (8th Cir. 2000). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).

### Applicable Statutory and Regulatory Provisions

The Social Security Act limits the amount of disability insurance benefits an individual may receive when simultaneously receiving worker's compensation benefits. When the Social Security disability insurance benefits paid on the disabled worker's earnings record plus the workers' compensation benefits exceed 80 percent of the individual's pre-disability earnings, the Act requires a reduction, called an offset, of the disability insurance benefits. Sunde, 417 F.3d at 987. The offset provision, 42 U.S.C. § 424a, provides in relevant part as follows:

**Reduction of disability benefits**

**(a) Conditions for reduction; computation**

> If for any month prior to the month in which an individual attains the age of 65 –
> **(1)** such individual is entitled to benefits under section 423 of this title [disability insurance benefits], and
> **(2)** such individual is entitled for such month to –
>
> **(A)** periodic benefits on account of his or her total or partial disability (whether or not permanent) under any other law or plan of . . . a State . . .,
> the total of his benefits under section 423 of this title for such month and of any benefits under section 402 [includes child's benefits] of this title for such month based upon his wages . . . shall be reduced (but not below zero) by the amount by which the sum of –
>
> **(3)** such total of benefits under sections 423 and 402 of this title for such a month, and
> **(4)** such periodic benefits payable (and actually paid) for such month to such individual under such law or plans,
>
> exceeds the higher of –
>
> **(5)** 80 per centum of his "average current earnings" . . . .

\*   \*   \*

**(b) Reduction where benefits payable on other than a monthly basis**
If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section.

<u>See also</u> 20 C.F.R. § 404.408. Social Security Ruling 87-21c and the SSA's Program

Operations Manual System ("POMS") DI 52001.555 set forth various methods of pro-

rating workers' compensation lump sum awards.

The purpose of § 424a is "to prevent the duplication of benefits inherent in the overlap between federal and state compensation programs for injured workers." Sunde, 417 F.3d at 989. The Commissioner is to evaluate the terms of workers' compensation settlement agreements "'in light of the Federal statute and its underlying policy to avoid duplication of benefits.'" Id. at 990 (quoting SSR 97-3, 62 Fed. Reg. 51923, 51925).

Certain expenses are excluded from the offset computation, including legal expenses incurred by the individual in connection with the workers' compensation claim if supported by sufficient evidence. 20 C.F.R. 404.408(d); Sunde, 417 F.3d at 987.

**Treatment of the Annuity**

Here, as noted above, the ALJ began with the $40,000 and $45,858.10 payments referenced in the settlement agreement. The ALJ then deducted 25 percent of this amount ($21,464.53) as attorney's fees, and pro-rated the remainder to arrive at a monthly rate by application of a formula with which Plaintiff takes no issue. The ALJ added this amount to the monthly benefit of $858.10 that was generated by the annuity to arrive at the offset amount.

In his brief Plaintiff asserts, as his sole argument, that the ALJ should have applied the pro-ration formula to the $130,000 used to purchase the annuity and used the resulting amount, rather than the monthly annuity payment, in the offset calculation. Application of the agreed-upon pro-ration formula to the $130,000 used to purchase the annuity – without any deduction for attorney's fees – would have resulted in a weekly rate of $87.87 ($130,000 divided by 1,479.4 weeks) and a monthly rate of $380.49

13

($87.87 x 4.33). In support of his argument, Plaintiff asserts that Exhibit A rather than Exhibit B reflects the structure of the workers' compensation settlement, and that the decision to purchase the annuity was a post-settlement decision made by Plaintiff that should not impact the amount's lump-sum character.

The Court finds that Plaintiff's argument is without merit. Exhibit B, and only Exhibit B, is expressly incorporated by reference into the settlement agreement. The first page of the settlement agreement specifically states that the settlement includes the $45,858.10 payment and "additional monthly payouts set out in Exhibit B." Tr. at 103. Exhibit B, in turn, references not the $130,000 used to purchase the annuity, but rather the monthly payments of $858.10. Exhibit B also sets apart the cash payment of $43,858.10 from the annuity payments of $858.10 "payable monthly." Tr. at 105. Language in the paragraphs of Exhibit B pertaining to the Employee's Right to Payment and the Right to Purchase an Annuity limit Plaintiff's rights with respect to these payments and further confirm the employer's obligation as one of monthly payments.

As such, the Court concludes that the ALJ's decision to use the monthly annuity payments of $858.10 in its offset calculation is supported by substantial evidence and is free from legal error. Although the ALJ may have mischaracterized, somewhat, Plaintiff's essential argument, and erroneously referred to § 404.408a, which does not apply to offset due to workers' compensation benefits, the fact remains that the language of the workers' compensation settlement agreement supports a finding that the monthly annuity payments were periodic benefits payable on a monthly basis, under § 424a(a), rather than a lump sum payable on other than a monthly basis, under § 424a(b). See

14

Campbell v. Shalala, 14 F.3d 424, 425 (8th Cir. 1994) (treating, without discussion, monthly benefits generated by an annuity purchased, as part of a workers' compensation agreement, by employer's insurer from a third party as periodic benefits payable on a monthly basis, under § 424a(2)(A)).

**Treatment of the Lump Sum Payment**

Although not raised by Plaintiff in his brief, the Court is concerned about a different aspect of the offset calculation. It is undisputed that after the payment of attorney's fees and litigation costs and the purchase of the annuity, Plaintiff was left with $26,000 in cash from the settlement.[4] From this Court's own review of the file, it appears that it is this amount that should have been pro-rated by the ALJ to a monthly rate and then added to the $858.10 to reach the total monthly offset amount. Instead, the ALJ pro-rated $64,393.57 and added that pro-rated monthly rate to the $858.10. The ALJ arrived at the $64,393.57 figure, rather than what this Court believes to be the correct $26,000 figure, by incorrectly deducting 25 percent for attorney's fees from the $85,858.10 ($40,000 + $ 45,858.10) rather than from the full $215,000 recovered from the settlement, as provided for in the settlement agreement and stipulated by the parties.

The Court may consider matters not directly raised by the parties when the failure to do so might result in a miscarriage of justice. See, e.g., Mayhew v. Allsup, 166 F.3d 821, 823-24 (6th Cir. 1999). As it appears that there is not substantial evidence in the

---

[4] $40,000 + $45,000 (approx.) + $130,000 = $215,000 - 25% ($53,717 in attorney's fees) - $5,282.12 (expenses) = $156,000 - $130,000 (purchase price of annuity) = $26,000.

15

record to support the Commissioner's decision regarding the treatment of the cash or lump sum portion of the settlement, the Court believes that the case must be remanded for a re-calculation of this aspect of the Commissioner's decision.

## CONCLUSION

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED IN PART AND REVERSED IN PART** and that the case be **REMANDED** for a re-calculation of Plaintiff's benefits consistent with this Memorandum and Order.

The parties are advised that they have ten (10) days, to and including January 2, 2007, to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 15th day of December, 2006.